J-S45031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ALOYSIUS OKORIE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| | : | |
| GLADYS OKORIE, | : | |
| | : | |
| Appellant | : | |
| | : | No. 1202 MDA 2024 |

Appeal from the Order Entered July 24, 2024
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
08765-2022

BEFORE:  OLSON, J., DUBOW, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:　　　　　　　**FEBRUARY 18, 2025**

Gladys Okorie ("Mother") appeals from the order granting Aloysius Okorie ("Father") primary custody of M.O.,[1] J.O., and B.O. (collectively, "Children") and granting Father's petition to relocate to Texas. Mother argues the trial court improperly applied the custody and relocation factors and abused its discretion in finding it was in Children's best interest for Father to have primary physical custody of Children and for Children to relocate with Father. We affirm.

Father initiated this custody action in October 2022 and filed a notice of proposed relocation to Texas. Mother objected. In February 2024, the court commenced a custody trial, where it conducted judicial interviews of M.O. and J.O.

---

[1] Some documents state the child's initial are N.O. However, the correct initials are M.O. Trial Court Opinion, filed Sept. 25, 2024, at 1 n.1.

M.O. was 11 years old at the time of the hearing and testified that he wanted to go to Texas with Father. N.T., Feb. 20, 2024, at 6. He stated that Mother says Father's mother is a "witch" and the other relatives "have been mean." *Id.* at 7. M.O. stated his Mother has "been calling [M.O.] demonic, evil and all that stuff." *Id.* He testified that his Father "has been protecting [him]; but, [Mother] is coming in to slap [him] or hit [him] or spank [him] or anything like that." *Id.* at 8. He stated that Mother has M.O. and J.O. write at least 25 sentences from the Bible every day and does not let them have a break. *Id.* at 9. He testified that if they do not finish, Mother wakes M.O. and J.O. at midnight to finish the sentences. *Id.* at 10. He testified that Mother "would punish [them] and not let [them] go to the bathroom at all, make [them] eat on [their] hands, be hitting [them] where our legs would be bleeding and everything." *Id.* at 12. He stated Mother used a wire to hit Children's legs. *Id.* at 13.

J.O., who was 10 years old at the time of the hearing, testified that Mother locked him and M.O. in the bedroom and they went to the bathroom in the bedroom because they had nowhere else to go. He said that as punishment, Mother "whipped" them and "stepped on [their] back[s]." *Id.* at 20. The court asked whether M.O. promised that he was telling the truth, and M.O. responded, "Yeah. I'm promising you just so I can get out of this torture." *Id.* at 21.

J.O. testified that Father "just said that [he] ha[d] to tell [the court] all the things that happen in the house." *Id.* at 28. He said that Mother scratches

him and once starved Children for three days. *Id.* at 29. He said that Mother hits Children on their backs with a wire and sometimes steps on their backs. *Id.* at 30-31. He testified Mother makes J.O. and M.O. write sentences from the Bible and if they do not finish, Mother will wake them in the middle of the night to write them. *Id.* at 33.

The parties underwent mental health evaluations and the court appointed a guardian ad litem ("GAL") for M.O. and J.O. The GAL filed a report finding Mother should be awarded primary custody. In the GAL's view, Father was acting in his, not Children's, best interest, and was "brainwash[ing]" Children "to alienate their affections towards Mother in order for Father to get what he wants." Letter From GAL to Trial Court, dated Apr. 19, 2024, at 5.

The court conducted the second day of the custody hearing in July 2024, and Mother and Father testified. That same month, the court awarded Father primary physical custody and granted Father's relocation petition. The court made the following findings regarding the custody factors:

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> > This factor is neutral.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the children, or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> > Father testified that he never abuses Mother, but that he has been a victim of abuse by Mother. Mother denies that she has abused Father or the children.

- 3 -

Although the evidence does not establish that either party has abused the other, there is ample evidence to support a finding that Mother has used excessive corporal punishment against the children. These actions by Mother have caused injury to the children and there is a continued risk of harm to the children.

The Court finds Mother's explanation of photos showing the results of injury on the children's bodies unreasonable and not believable.

Father has and can better provide adequate physical safeguards and supervision of the children.

This factor weighs heavily against Mother and in favor of Father.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

Father testified he contacted Luzerne County Children and Youth Agency and there has not been a finding of abuse against either party.

This factor weighs neutral.

(3) The parental duties performed by each party on behalf of the children.

Each party testified that he/she performed most of the parental duties.

This factor weighs neutral.

(4) The need for stability and continuity in the children's education, family life and community life.

The school age children have been performing well in school. However, their family life has been nothing short of continued turmoil mostly because of Mother's actions and the dysfunctional family dynamic. Father is heavily involved in bringing the children to soccer and church . . . where Mother wishes to not be a part of those community activities.

This factor weighs against Mother.

(5) The availability of extended family.

> Both Father and Mother have no extended family in Luzerne County, Pennsylvania. Father has extended family in Texas, which includes his mother, two sisters, their children and his uncles. Mother has no family in the United States.

> This factor is neutral.

(6) The Children's sibling relationships.

> The parties have three children, two boys and one girl. The children have the usual sibling difficulties, but it is troubling that at least one child feels that Father has to protect the children from Mother. The fractured dynamic with the parents also creates division among the children. [B.O.] is usually with the Mother while Father locks the boys away from Mother so they can sleep uninterrupted while he goes to work.

> This factor weighs against Mother.

(7) The well-reasoned preference of the children, based on the child's maturity and judgment.

> The Court interviewed in camera the two older siblings and has considered their preference in arriving at the custody order.

> This factor weighs against Mother.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

> The actions of Father can be considered the turning of the children against Mother, however the Court perceives his actions as protecting the children from abuse.

> This factor favors Father.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

This factor favors Father.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the children.

The emotional well-being of the children is a significant concern for the Court.

Father can best attend to the emotional needs of the children. The Court also is concerned with Mother's attitude regarding discipline which historically has been abusive. This factor favors Father.

(11) The proximity of the residences of the parties.

The parties live in the same home.

This factor is not applicable.

(12) Each party's availability to care for the children or ability to make appropriate child-care arrangements.

Father works as a nurse at a nearby hospital on the night shift. Mother tele-works from home as a crisis worker and run[s] an online lottery for Nigerian people as a charity. Presently, while Father is at work Mother is available to care for the children.

Since the parties still live together this factor is not applicable.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

The parties are in a high conflict situation and do not cooperate with each other.

This factor is neutral.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

This factor is not applicable.

(15) The mental and physical condition of a party or member of a party's household.

> Mother has had mental health issues in the past which she relates to her emotional state after the birth of her youngest child. She agreed that she was involuntarily committed for a period of seventy-two hours. Father alleges she was suicidal in the past. Both parties have had mental health evaluations with reports having been provided to the Court. There is no mental health diagnosis for either party.

> This factor is neutral.

(16) Any other relevant factor.

> The Court is very concerned by Mother's attitude toward discipline and her pressing the older children to write sentences extensively, even to the early morning hours. The Court is concerned with Mother's habit of waking the children in the night and making them write their sentences as punishment and education. The Court finds that Mother did strike the older child to such an extent on his back that it left raised welts. The Court viewed marks on the two older boys from being hit with "wires" by Mother. While Luzerne County Children and Youth Services made no finding of abuse against Mother, this Court finds that the treatment of the children is a determinative factor and that primary physical custody should be awarded to Father. The Court is of the opinion that the emotional state of the children has been and continues to be adversely impacted by Mother's actions.

> This factor weighs for Father.

Trial Court Opinion, filed July 24, 2024, at 9-15 (emphasis omitted).

The court made the following findings regarding the relocation factors:

> 1. The nature, quality, extent of involvement and duration of the children's relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the children's lives.

- 7 -

Both parties have been involved in the children's lives since birth. There has not been a significant relationship with extended family of either party. Mother is averse to the family having any relationship with Father's family in Texas.

This factor slightly favors Father.

2. The age, development stage, needs of the children and the likely impact the relocation will have on the children's physical, educational and emotional development, taking into account any special needs of the children.

Relocation will benefit the children especially as it affects their emotional needs. This factor favors Father.

3. The feasibility of preserving the relationship between the non-relocating party and the children through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

The relationship between the non-relocating party and the children can be preserved through a liberal custody schedule. Mother has a flexible work schedule. This factor favors relocation and Father's request.

4. The children's preference, taking into consideration the age and maturity of the children.

The Court has considered the preferences of the two older children in arriving at the custody order. The youngest child is too young to testify. This factor weighs for Father and relocation.

5. Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the children and the other party.

This factor is neutral.

6. Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to financial or emotional benefit or educational opportunity.

The relocation will enhance the general quality of life of Father since he will have greater support from family members and this will greatly enhance his emotional well-being.

This factor favors relocation.

7. Whether the relocation will enhance the general quality of life for the children, including but not limited to financial or emotional benefit or educational opportunity.

Relocation will greatly enhance the emotional well-being of the children. Relocation will provide them with a more stable life, free from the fear of excessive corporal punishment. This factor favors relocation.

8. The reasons and motivation of each party for seeking or opposing the relocation.

Father desires a better environment with family-support.

Mother opposes relocation because she believes it best if the children remain in Luzerne County, Pennsylvania. She also believes Father agreed he would not live close to his family when they both agreed to move to the United States from Nigeria since she was leaving her family in Nigeria.

This factor favors relocation.

9. The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

Father testified that he never abuses Mother, but that he has been a victim of abuse by Mother. Mother denies that she has abused Father or the children.

Although the evidence does not establish that either party has abused the other, there is ample evidence to support a finding that Mother has used excessive corporal punishment against the children. These actions by Mother have caused injury to the children and there is a continued risk of harm to the children.

> The Court finds Mother's explanation of photos showing the results of injury on the children's bodies unreasonable and not believable.
>
> Father has and can better provide adequate physical safeguards and supervision of the children.
>
> This factor weighs in favor of relocation.
>
> 10. Any other factor affecting the best interest of the child.
>
> See factor 16 discussed above. This factor favors relocation.

*Id.* at 15-21 (emphasis omitted).

Mother appealed, and raises the following issues:

> 1. Whether the trial court improperly applied the custody factors and abused its discretion in determining that it was in the best interest of the minor children to award primary physical custody to [Father].
>
> 2. Whether the trial court improperly applied the custody factors and abused its discretion in determining that it was in the best interest of the minor children to relocate with [Father] to Texas.

Mother's Br. at 2. Mother's issues challenge the court's analysis of both the custody and the relocation factors. We will address Mother's issues together.

Regarding the custody factors, Mother maintains that she is the party more likely to encourage continuing contact between Children and the other party. She points to evidence that Father "encouraged the children to lock themselves in their rooms in order to escape Mother's supervision." *Id.* at 8. Mother challenges the court's finding that she used excessive corporal punishment, noting that Children and Youth Services found no abuse and that Father never filed for a protection from abuse order on behalf of Children.

Mother next argues that Father only started performing parental duties after he filed the petition for relocation. She argues she had been the primary custodian since Children's birth. Mother further notes that she continues to be the primary custodian for B.O., who has a cardiac ailment, and that Father did not know B.O.'s cardiologist and has never spoken to her physician.

Regarding stability and continuity in Children's education, family life and community life, Mother agrees with the court that Children are doing well in school and participate in extracurricular activities. She, however, alleges any dysfunction in the family is caused by Father, who works nights, has moved the family multiple times, and allegedly locked the older children in a bedroom so they did not have to obey Mother. Mother agrees that neither party has extended family in Pennsylvania, but maintains that Father's family in Texas had not been welcoming when she and Children stayed with them in the past and that there had been no evidence of communication between Children and the family in Texas.

For the factor addressing the siblings' relationship, Mother maintains that Children share a close relationship with her. Although the court found a "fractured dynamic," she maintains that the family situation "simply proves Father's disrespect for her as a parent and her capacity to supervise these children as being the primary caretaker." *Id.* at 11. Mother claims the trial court did not discuss the preference of Children, and she points to the GAL report, which opined that the court should deny the petition for relocation and that Children should remain with Mother. She further points out that Father

told Children about the court proceeding and told his son to take pictures of marks on Father's body. Mother further notes that the trial court acknowledged that Father's actions could be considered turning Children against her, and claims the court reached the conclusion that Father was protecting Children from abuse without any independent evidence from neighbors, doctors, or friends, and claims the court should take "notice . . . of the absence of any court filings to protect" Children. *Id.* at 12. Mother next claims the court found Father was more likely to maintain a loving, stable and consistent relationship with Children without any discussion, and claims the "record is replete with evidence showing that Mother performed all parental duties prior to Father filing for relocation." *Id.*

Mother next claims the court's finding that Father is best able to attend Children's emotional needs, and its issues with her disciplinary methods, are undermined by Mother's explanations, her "exclusive role in caring for B.O.," and the court's failure to consider the lack of evidence supporting Father's allegations. *Id.*

As for the parties' ability to care for Children, Mother contends that the court conceded she was available to care for Children while Father was at work. Mother also noted that although she had a mental health issue in the past, the court "properly concluded that it was related to post-partum depression" and that although she had been involuntarily committed to a mental health institution several years ago, she had no current medical or psychiatric services, and that the mental health evaluation found no mental

health diagnoses. *Id.* at 13. Mother also challenges the court's concern about her discipline. She notes that she denied waking Children to write Bible verses or hitting Children to the extent of causing welts.

Regarding the relocation petition, Mother again notes that Father became involved in parental duties only after he filed the petition for relocation. She claims the court found relocation would benefit Children, especially their emotional needs, without any discussion, and argues that it was "uncontroverted that the youngest child B.O. is very attached to" Mother. *Id.* at 17. She further argues Children had a "terrible experience living with Father's family previously," including allegedly being denied food by Father's family. *Id.*

Mother argues that in finding her relationship with Children could be preserved through a liberal custody schedule, the court "failed to recognize the 1,500 mile trip that would take approximately 25 hours by car, and 5 hours by jet." *Id.* at 18. Mother faults the court for finding Children's preference favored Father after "only interviewing the children for a brief period of time," and for "ignoring the [GAL's] recommendation." *Id.*

Mother disputes the court's finding that the factor relating to the likelihood the party will promote or thwart Children's relationship with the other party is neutral. She claims the court ignored the evidence that Father instructed Children to ignore her and lock their door so she could not supervise them when he was away. She points out that despite Father's allegations, he never removed Children from the home.

As for whether relocation will enhance Father's quality of life, Mother maintains that the court found this factor favored relocation without explaining its reasoning and in the absence of evidence from Father on this factor. She states Father offered no testimony about the school Children will attend and notes that he testified that he had not visited Texas in three years. She asserts that Children were happy and doing well in school in Pennsylvania. She claims there was no testimony about the quality of education or the proposed neighborhood in Texas. She further points out Father did not present evidence he obtained employment in Texas or had purchased a home or leased an apartment in Texas. Mother also cites her testimony that she and Father had an agreement that they would not live with his family.

For the factor considering present and past abuse, Mother again points out that despite his allegations, Father did not file a protection from abuse petition and emphasizes that CYS concluded the allegations were unfounded. Mother argues that Father's desire to relocate to Texas "was in his best interest and not the children['s]." *Id.* at 20. She claims the court failed to discuss any benefits to Children or the lack of bond between Father's family and Children.

When this Court reviews a custody order, we must "accept the factual findings of the trial court that are supported by competent evidence of record and . . . defer to the trial court's weighing of the evidence." *S.S. v. K.F.*, 189 A.3d 1093, 1098 (Pa.Super. 2018). This is because "the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately

be imparted to an appellate court by a printed record." ***Ketterer v. Seifert***, 902 A.2d 533, 540 (Pa.Super. 2006) (citation omitted). We will only reject a trial court's decision if it is unreasonable in light of the court's sustainable findings, involves an error of law, or constitutes an abuse of discretion. ***S.S.***, 189 A.3d at 1098.

Pursuant to the Child Custody Act, a custodial party seeking to relocate a child's residence must first provide notice to the other custodial parties. 23 Pa.C.S.A. § 5337(c). If a party objects to the relocation, the court must hold a hearing and consider whether relocation is warranted under the statutory relocation factors. ***Id.*** at § 5337(g), (h). Those factors are:

> (1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.
>
> (2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.
>
> (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.
>
> (4) The child's preference, taking into consideration the age and maturity of the child.
>
> (5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.
>
> (6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not

limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

*Id.* at § 5337(h). The court must give "weighted consideration to those factors which affect the safety of the child[.]" *Id.*

"If the proposed relocation will result in a change in custody, the court must also consider the custody factors in Section 5328(a)." *S.S.*, 189 A.3d at 1098. Those factors are:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a) (eff. Jan 1, 2014, to Aug. 12 2024).[2] The court must use the factors to "determine the best interest of the child," again "giving weighted consideration to those factors which affect the safety of the child[.]"

_____

[2] These were the factors applicable at the time of the custody hearing. The statute has been amended effective August 13, 2024. 23 Pa.C.S.A. § 5328 (eff. Aug. 13, 2024).

*Id.* The court "should avoid 'dissociating the issue of primary custody from the issue of relocation,' and should instead decide the two issues together 'under a single umbrella of best interests of the children.'" *S.S.*, 189 A.3d at 1098 (quoting *S.J.S. v. M.J.S.*, 76 A.3d 541, 550 (Pa.Super. 2013)).

In its Rule 1925(a) opinion, the court concluded:

> In its decision to grant Father's Petition for Relocation and to award him primary custody of the three minor children, the [c]ourt [gave] much weight to the physical safety of the minor children. The Court interviewed the two older children, M.O. and J.O., and found them credible in their description of the physical and mental abuse they suffered at the hands of Mother. The Court observed firsthand the marks and scars left by Mother's excessive physical abuse. One need only review the cold transcript to understand this abuse; however, the Court viewed and could see how this abuse affected the children. M.O. testified that Mother used a wire to hit them on "our legs" and we "would start bleeding". M.O. stated Mother hits us on the hands resulting in bleeding. M.O. stated on one occasion Mother locked the children in a room and since they had to urinate, they did so somewhere in the room, but Mother found it and "whipped us". When asked if he promised to tell the truth, he promised "so I can get out of this torture". He further stated he does not feel safe when Father is not at home. J.O. testified Mother keeps a wire and uses it. Mother tells the children to take off their shirts and "hits us on the back" and sometimes she "steps on us on the back and it really hurts". J.O. displayed marks on his calf (which the Court observed) caused by Mother's use of the wire. In Court, a photo presented of a child's back was very visibly marked by separated strands that looked like the mark was made by cords.
>
> During her testimony, which the Court found to be generally evasive and not credible, Mother denied she used a wire to cause the welts which were visible on photographs. Mother did state that she uses slippers to hit the children.

As stated in its consideration of the factors under 23 Pa.C.S. §§ 5328(a) and 5337(h), the evidence supports the finding that the children are at risk of harm from the Mother where Father is able to provide adequate safeguards for the children. The relocation of the children to Texas allows other family members to have eyes on the children in an attempt to shelter the children from abuse. The Court finds that the family continuing to reside in Pennsylvania with no third party or family support/assistance was putting the children at continued risk. In conclusion, the Court's consideration of all factors provides support for the award of primary physical custody to Father and for the grant of his petition to relocate with the minor children to Texas.

Trial Ct. Op., filed Sept. 25, 2024, at 6-7 (footnote and internal citations to record omitted).

We conclude the trial court did not abuse its discretion in applying the custody factors or the relocation factors. The record supports the court's findings of facts and credibility determinations. The court determined that Mother's use of corporal punishment was not in Children's best interest, and that Children's best interest would be met by awarding primary custody to Father and permitting relocation to Texas, to be near Father's extended family. This was not an abuse of discretion.

In closing, we express our disapproval of the failure of the GAL to file a brief in this appeal. The trial court appointed the GAL to represent the best interests of M.O. and J.O. After interviewing M.O., J.O., Mother, and Father, and reviewing the pleadings and relevant documentation, the GAL filed a report with the court recommending that Mother be awarded primary custody of Children. As noted above, the GAL found, among other things, that Father was acting in his, not Children's, best interest, and was "brainwash[ing]" Children

"to alienate their affections towards Mother in order for Father to get what he wants." Letter From GAL to Trial Court, dated Apr. 19, 2024, at 4-5. She further found "[t]he credibility of Father [wa]s highly questionable." *Id.* at 5. The GAL stated her "recommendation [wa]s given based upon all information as provided to this point," but that "testimony and evidence presented during court proceedings may result in amendment." *Id.* It does not appear from the record that the GAL ever amended her findings or recommendation.

"[T]he best interest of the child is paramount" in custody matters. *T.M. v. H.M.*, 210 A.3d 283, 288 (Pa.Super. 2019); *accord* Trial Ct. Op., filed Sept. 25, 2024, at 5 (citation omitted). A GAL is appointed to be the voice of the child and to make sure that the child's best interest remains the focus and foundation of the custody decision. Here, the trial court awarded custody to Father even though the GAL raised serious issues regarding Father and concluded that Father was not acting in Children's best interests. In such a case, the GAL should have been an active participant in the appeal.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/18/2025

- 20 -